# EXHIBIT D

Notice of Appeal and Written Defense in Opposition to ICE Decision to Fine Under INA § 274D (July 24/28, 2026)

## NOTICE OF APPEAL

This Notice of Appeal must be filed with the U.S. Department of Homeland Security (i.e., postmarked) within 15 business days from the date of service of Notice of Violation and Order. Please read the complete appeal instructions.

## APPEAL INSTRUCTIONS

I. **Filing requirements.** You must file this Notice of Appeal with the U.S. Department of Homeland Security within 15 business days from the date of service of the Notice of Violation and Order. You may provide a written defense or documentary evidence, or both, setting forth the reasons why a penalty should not be imposed. Your written defense and/or documentary evidence must be filed with the written notice of appeal. You should file the written notice of appeal and any accompanying material with the U.S. Department of Homeland Security in accordance with the filing instructions and at the address provided in the decision. The initial Notice of Violation and Order remains inoperative during the appeal period and while a timely administrative appeal is pending.

II. **Review.** Your appeal is handled by a supervisory immigration officer who did not issue the original decision. That supervisory immigration officer will review the record de novo within 10 days after the notice of appeal is filed and may, in their discretion, call for additional briefing or written filings from you. If the officer requests additional briefing or written filings from you, you must return the information to the officer within 15 days from receipt of that request. In all cases, the supervisory immigration officer will issue a decision in writing no later than 45 calendar days after the notice of appeal was filed and serve it on you.

III. **Record.** The record reviewed by a supervisory immigration officer will include the immigration officer's decision, the evidence contained in the U.S. Department of Homeland Security's administrative file, and any written filings, documentary evidence, or other relevant material timely filed by you in connection with your appeal. If requested by you on appeal, the supervisory immigration officer shall provide copies of pertinent documentation and records relevant to the penalty unless such records are law enforcement sensitive or disclosure is prohibited by law.

IV. **Secretary of Homeland Security.** The supervisory immigration officer's decision or, if no appeal is taken, the Notice of Violation and Order constitutes final agency action unless the Secretary of Homeland Security, or the Secretary's designee, certifies for de novo review the decision to issue civil monetary penalties under sections 240B(d), 274D(a), or 275(b) of the Act and issues a new decision.

## APPEAL

I am filing an appeal of a Notice of Violation and Order for the following reasons:

Please see attached brief.

☑ I have attached additional sheets with the reasons for my appeal.
☑ I have attached a separate written brief or statement.
☑ I have attached additional documentary evidence.

| Name | File Number | Penalty Tracking Number |
|---|---|---|
| JERMAINE WILLIAMS | 099231797 | C260129062 |

By signing below, I do solemnly swear or affirm that the information provided in this Notice of Appeal and supporting documentation is true, complete, and correct to the best of my knowledge and belief, and I understand that providing false information may result in penalties under federal law.

Signature: [signature]

Date: 7-24-2026

Printed Name: Jermaine R. St. Mark Williams

File Number:

Penalty Tracking Number:

Current Mailing Address: 509 Oakwood Ct, Woodstock, Georgia 30188

Phone Number: 404-933-1109

Email Address: AAVeitch@aol.com or Dahdz_2001@yahoo.com

Tracie L. Morgan, Esq.
Hope Immigration, LLC
2110 Powers Ferry Road SE, Suite 310
Atlanta, GA 30339
678-713-4255
tracie@hopeimmigration.com
GA Bar No. 411089
Attorney for Respondent

**U.S. DEPARTMENT OF HOMELAND SECURITY**
**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**

| | |
|---|---|
| In the Matter of<br>Jermaine Ricardo Williams,<br>Respondent | File No. A099 231 797<br><br>Decision Tracking No.: C260129062 |

# NOTICE OF APPEAL, APPEAL, AND WRITTEN DEFENSE IN OPPOSITION TO ICE DECISION TO FINE UNDER INA § 274D

## INTRODUCTION AND DENIAL OF ALLEGATIONS

Under 8 C.F.R. § 281.1(e), Respondent Jermaine Ricardo Williams ("Mr. Williams") appeals the Decision and Order issued by the Department of Homeland Security ("DHS") on July 10, 2026, assessing a civil penalty of **$1,820,352.00** pursuant to INA § 274D.

This appeal concerns the limits of administrative authority. Congress authorized DHS to impose civil penalties only where the statutory requirements of INA § 274D have been established. Congress did not authorize DHS to impose the statutory maximum based upon unsupported conclusions, incorrect factual assumptions, or the mere existence of a final order of removal.

Yet that is precisely what occurred here.

Without conducting a hearing, identifying any supporting evidence, explaining how it calculated the proposed penalty, or demonstrating that Mr. Williams willfully violated INA § 274D, DHS seeks to impose a civil penalty exceeding **$1.8 million** against an individual who has spent more than a decade openly pursuing lawful immigration relief through the very agency now seeking to punish him.

The Decision identifies no evidence that Mr. Williams ever refused to depart the United States after being requested to do so. It identifies no evidence that he failed to apply for travel documents. It identifies no evidence that he failed to report for removal after being instructed to appear. It identifies no evidence that Jamaica was prepared to receive him. It identifies no explanation of when any alleged violation began, how long it continued, or how DHS calculated the amount assessed.

Instead, the Decision consists almost entirely of legal conclusions. Legal conclusions, however, are not evidence.

Nor may an administrative agency impose a civil sanction based solely upon conclusions. The Administrative Procedure Act requires that agency sanctions rest upon "reliable, probative, and substantial evidence." 5 U.S.C. § 556(d). Allegations and conclusory statements cannot satisfy that burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986).

Accordingly, Mr. Williams denies each allegation contained in the Decision and requires DHS to prove every element necessary to establish liability under INA § 274D.

Specifically, DHS bears the burden of establishing:

- the existence of a qualifying final order of removal;
- the correct operative date of that order;
- that Mr. Williams willfully failed or refused to engage in conduct prohibited by INA § 274D;
- the date on which any alleged violation commenced;
- the period during which any violation continued;
- the legal and factual basis for calculating the assessed penalty; and
- that the penalty imposed reflects an individualized exercise of the discretion delegated by Congress.

The present administrative record establishes none of those elements.

Indeed, the Decision rests upon a demonstrably incorrect factual premise. DHS asserts that Mr. Williams's removal order became final on May 27, 2016. That is incorrect. May 27, 2016 was merely the date the Board of Immigration Appeals denied a motion to reopen; it was not the date on which any removal order became final. That factual error infects every subsequent finding in the Decision, including DHS's apparent calculation of the alleged violation period.

Mr. Williams therefore requests production of the complete administrative record, including all documents, calculations, internal memoranda, electronic records, and other materials relied upon

in assessing this penalty, together with a meaningful opportunity to respond to that evidence before any penalty becomes final. See 8 C.F.R. § 281.1(e)(3).

For the reasons discussed below, DHS has failed to satisfy its statutory burden, failed to comply with the Administrative Procedure Act, and failed to provide the process required by the Constitution. The Decision should therefore be rescinded in its entirety.

Finally, during the pendency of this appeal, Mr. Williams respectfully requests that DHS continue to treat the Decision as inoperative pursuant to 8 C.F.R. § 281.1(e)(1) and refrain from referring the assessed penalty for collection by the Department of the Treasury until all administrative and judicial review has concluded.

## RELEVANT FACTS AND PROCEDURAL HISTORY

Mr. Williams is a native and citizen of Jamaica who first entered the United States on April 24, 2002, as a B-2 visitor authorized to remain until October 25, 2002. He has remained continuously present in the United States since that time. An April 29, 2024 FBI Identity History Summary confirms that he has no criminal history at the federal, state, or local level.

Mr. Williams has established deep and longstanding ties to the United States. He has been married to his United States citizen wife, Ashley Veitch, since June 13, 2013. Together they are raising two United States citizen daughters, Geneva (11) and Naevia (9), both born in Georgia. Since Ms. Veitch lost her employment in October 2025 due to significant medical conditions, including fibromyalgia, sleep apnea, ADHD, temporomandibular disorder, cardiac arrhythmia, and other documented health issues, Mr. Williams has served as the family's sole financial provider and primary caregiver. His removal—or the enforcement of a $1,820,352.00 civil penalty—would have immediate and devastating consequences for his United States citizen family.

More importantly for purposes of this appeal, Mr. Williams has never concealed himself from immigration authorities or attempted to evade the immigration system. For more than a decade following entry of his removal order, he has openly pursued every lawful avenue available to regularize his immigration status.

Mr. Williams was initially placed in removal proceedings after a marriage-based petition filed on his behalf in 2004 was denied and referred to the Executive Office for Immigration Review. On July 23, 2008, an Immigration Judge ordered Mr. Williams removed to Jamaica. He timely appealed that decision to the Board of Immigration Appeals ("BIA"), which remanded the matter to permit him to pursue special rule cancellation of removal under INA § 240A(b)(2).

Following remand, the Immigration Judge denied that application on July 11, 2011, but granted voluntary departure with an alternate order of removal. Mr. Williams again appealed. On April 17, 2013, the BIA dismissed the appeal. Because the voluntary departure bond was not posted, the alternate removal order became administratively operative at that time.

This procedural history is significant because DHS's Decision incorrectly states that Mr. Williams's removal order became final on May 27, 2016. That date does not correspond to the entry or finality of any removal order. Rather, it is simply the date on which the BIA denied a later motion to reopen. DHS's factual error is not merely technical. The purported finality date forms the foundation of the Decision and necessarily affects DHS's analysis of notice, alleged willfulness, and the calculation of the proposed civil penalty.

Following the entry of his removal order, Mr. Williams did not disappear, evade immigration authorities, or engage in conduct designed to frustrate enforcement. Instead, he continued working, supporting his United States citizen family, and pursuing lawful immigration relief through DHS and the immigration courts.

Among other things:

- On March 3, 2015, USCIS approved an immediate-relative Form I-130 petition filed by Mr. Williams's United States citizen spouse.
- On July 13, 2017, Mr. Williams filed Form I-212 seeking permission to reapply for admission following removal. USCIS accepted that application and, to Respondent's knowledge, it remains pending nearly a decade later.
- Counsel repeatedly requested prosecutorial discretion and sought a joint motion to reopen between 2023 and 2025. DHS never responded.
- On April 11, 2025, the National Visa Center notified Mr. Williams that an immigrant visa had become available, confirming that he continued pursuing lawful permanent residence through established statutory procedures.

Throughout this same period, Mr. Williams maintained continuous employment with Momentum Telecom, advancing from a Tier I IT Agent to Senior Business Analyst while supporting his wife and daughters and paying federal and state taxes.

Notably absent from the administrative record is any evidence that DHS ever instructed Mr. Williams to report for removal, directed him to obtain travel documents, scheduled his removal, informed him that Jamaica was prepared to receive him, or otherwise requested that he undertake any action that he subsequently refused. Nor has DHS identified any evidence that Mr. Williams concealed his whereabouts, absconded, failed to appear for a scheduled removal, or engaged in conduct designed to prevent or hamper his departure.

Instead, the record reflects an individual who remained continuously visible to the Government while openly pursuing lawful immigration relief through the very agency that now seeks to impose an extraordinary civil penalty.

Finally, the proposed penalty bears no relationship to Mr. Williams's actual financial circumstances. He is the sole wage earner for a family of four, earning approximately $2,500 to $3,000 per month after taxes. Nearly all of that income is consumed by housing, medical expenses, and ordinary living costs. The proposed penalty of **$1,820,352.00** exceeds any realistic ability to pay and would effectively impose financial ruin upon Mr. Williams and his United States citizen family.

## ARGUMENT

### I. DHS Bears the Burden of Establishing Every Element Necessary to Impose a Civil Penalty Under INA § 274D.

This proceeding concerns the Government's attempt to impose an extraordinary civil penalty of **$1,820,352.00** against Mr. Williams pursuant to INA § 274D. Because DHS seeks to impose a sanction, it bears the burden of establishing every factual and legal prerequisite necessary to support both liability and the amount of the proposed penalty.

Although INA § 274D does not expressly allocate the burden of proof, the Administrative Procedure Act ("APA") does. In formal administrative adjudications, "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof." 5 U.S.C. § 556(d). The APA further provides that "[a] sanction may not be imposed...except on consideration of the whole record...supported by and in accordance with the reliable, probative, and substantial evidence." *Id.* Those requirements apply with particular force where, as here, the Government seeks to impose an extraordinarily severe monetary sanction.

Accordingly, DHS—not Mr. Williams—must establish every element necessary to sustain liability under INA § 274D. That burden includes proving, at a minimum:

- that Mr. Williams was subject to a qualifying final order of removal;
- the correct operative date of that order;
- that Mr. Williams willfully failed or refused to engage in conduct prohibited by INA § 274D;
- the date on which any alleged violation commenced;
- the period during which any violation continued;
- the legal basis for calculating the proposed penalty; and

- that the amount assessed reflects the individualized exercise of the discretion Congress delegated to the agency.

The burden does not shift merely because DHS has issued a Notice of Violation. Administrative allegations are not evidence, and legal conclusions cannot substitute for proof. Rather, DHS must establish each element through evidence contained in the administrative record.

That distinction is especially important here. The Decision seeks to impose a penalty exceeding **$1.8 million**—an amount capable of permanently devastating the financial security of Mr. Williams and his United States citizen family. Proceedings seeking sanctions of this magnitude demand careful adherence to statutory and procedural safeguards. See *Woodby v. INS*, 385 U.S. 276, 286 (1966) (recognizing the grave consequences of immigration proceedings and requiring a heightened evidentiary burden); see also *United States v. Sanchez*, 520 F. Supp. 1038, 1042 (S.D. Fla. 1981), aff'd, 703 F.2d 580 (11th Cir. 1983) (describing immigration civil penalties as punitive or "quasi-criminal" in nature).

The seriousness of the proposed sanction also underscores why Congress required proof of specific statutory elements rather than permitting liability to arise automatically from the existence of a final order of removal. Had Congress intended every noncitizen who remained in the United States after a final order to incur a daily monetary penalty, it easily could have written such a statute. Instead, Congress imposed liability only where DHS can establish that the respondent **willfully failed or refused** to undertake particular actions identified in INA § 274D. Those statutory terms must be given meaning. They cannot be presumed merely because a respondent remains physically present in the United States.

Nor may DHS satisfy its burden through generalized assertions or standardized forms. Administrative agencies must articulate a rational connection between the facts established in the record and the conclusions they reach. The burden is not satisfied by reciting statutory language or checking boxes on a preprinted notice. Rather, the agency must identify the evidence supporting each factual finding and explain how that evidence satisfies the statutory requirements imposed by Congress.

Here, DHS has not done so.

As discussed below, the administrative record contains no evidence establishing several essential elements of liability under INA § 274D. The Decision rests upon an incorrect factual premise concerning the operative removal order, identifies no evidence that Mr. Williams ever willfully refused to comply with any request by DHS, provides no explanation regarding the commencement or duration of any alleged violation, and offers no individualized basis for assessing the statutory maximum penalty. Because DHS has failed to carry its burden, the Decision cannot stand.

**II. DHS Has Failed to Establish the Statutory Elements Required by INA § 274D.**

*A. The Decision Rests Upon an Incorrect Factual Predicate.*

Before DHS may impose a civil penalty under INA § 274D, it must establish the factual predicate upon which the alleged violation rests. Here, it has failed to do so.

The Decision states that Mr. Williams became subject to a final order of removal on May 27, 2016, and relies upon that date as the basis for imposing liability under INA § 274D. That assertion is demonstrably incorrect.

The administrative record reflects that Mr. Williams appealed the Immigration Judge's July 11, 2011 decision granting voluntary departure with an alternate order of removal. On April 17, 2013, the Board of Immigration Appeals dismissed that appeal. Because the voluntary departure bond was never posted, the grant of voluntary departure automatically terminated, and the alternate order of removal became operative at that time pursuant to its own terms. May 27, 2016 was not the date on which any removal order became final. Rather, it was simply the date on which the Board denied a later motion to reopen. The denial of a motion to reopen does not create a new removal order, restart the finality of an existing order, or otherwise alter the operative date of the underlying removal order.

Accordingly, the Decision rests upon a factual premise that is plainly inconsistent with the procedural history of Mr. Williams's immigration proceedings. Nor is this error harmless.

The date upon which a removal order becomes final is central to DHS's theory of liability. It necessarily affects the agency's determination of when any alleged violation of INA § 274D commenced, the period over which penalties allegedly accrued, the amount of the proposed penalty, and the agency's assertion that Mr. Williams willfully failed to depart after the order became final. Because DHS identified the wrong operative date, each of those conclusions necessarily rests upon an inaccurate factual foundation.

Equally significant, the Decision provides no explanation for why DHS selected May 27, 2016 as the operative date. It cites no statute, regulation, administrative precedent, or evidence supporting that conclusion. Nor does it explain why the denial of a motion to reopen should be treated as the final order of removal when the immigration statutes and regulations provide otherwise. The absence of any explanation prevents meaningful review of the Decision and further demonstrates that the agency failed to articulate a rational connection between the facts contained in the record and the conclusions it reached.

Administrative agencies may not impose sanctions based upon demonstrably incorrect factual findings. The Administrative Procedure Act requires agency action to be supported by reliable, probative, and substantial evidence. 5 U.S.C. § 556(d). Where the agency's analysis begins with an incorrect factual premise and provides no explanation for that premise, the resulting decision cannot satisfy that standard.

For that reason alone, the Decision should be rescinded.

*B. DHS Has Produced No Evidence That Mr. Williams Willfully Failed or Refused to Depart the United States.*

Even if DHS had correctly identified the operative removal order—which it did not—the Decision still fails because DHS has produced no evidence establishing the central element required by INA § 274D: that Mr. Williams willfully failed or refused to depart the United States.

The statute does not impose liability simply because an individual remains physically present in the United States following entry of a final order of removal. Congress could have enacted such a statute. It did not.

Instead, Congress imposed civil penalties only where a noncitizen "willfully fails or refuses" to undertake specified conduct. INA § 274D(a). The ordinary meaning of those terms matters. "Willfully" requires intentional conduct. "Refuses" implies the conscious rejection of an opportunity or request. Neither term is satisfied merely because an individual continues to reside in the United States after the entry of a removal order. Dictionaries contemporaneous with the enactment of the statute define "refuse" as "to express oneself as unwilling to accept" or "to decline to comply with a request or demand." Likewise, "willful" ordinarily denotes intentional or purposeful conduct rather than mere inaction. These ordinary meanings reinforce that Congress required proof of a deliberate rejection of a governmental directive—not merely continued physical presence in the United States.

DHS's Decision effectively reads the words "willfully fails or refuses" out of the statute altogether. Under the Decision's reasoning, every individual who remains in the United States after entry of a final order would automatically incur daily civil penalties, regardless of the surrounding circumstances, whether DHS ever attempted to execute the order, whether the individual remained in communication with immigration authorities, whether lawful immigration relief remained pending, or whether DHS itself delayed adjudicating applications that could ultimately affect the individual's immigration status.

Congress did not write the statute that way.

The Decision identifies no evidence that Mr. Williams ever refused any request made by DHS. It identifies no order directing him to report for removal. It identifies no notice requiring him to appear at a designated place and time. It identifies no request that he obtain travel documents. It identifies no communication advising him that travel arrangements had been made. It identifies no evidence that Jamaican authorities had agreed to accept him. It identifies no evidence that DHS attempted to execute the removal order but was prevented from doing so by any action taken by Mr. Williams. Most importantly, it identifies no act of refusal.

Instead, DHS appears to infer willfulness solely from Mr. Williams's continued presence in the United States. That inference is inconsistent with the text of INA § 274D.

Continued presence may establish that an individual has not departed. It does not establish why the individual remained, whether DHS sought to remove the individual, whether departure was reasonably available, or whether the individual intentionally refused to comply with a lawful directive. The statute requires proof of willful conduct, not speculation regarding motive.

Federal courts have likewise recognized that "willfulness" generally requires more than mere noncompliance. Congress employed the same operative phrase—"willfully fails or refuses"—in related immigration provisions. Courts interpreting that language have required proof of intentional misconduct or bad purpose, not simply the existence of a prohibited condition. See *Heikkinen v. United States*, 355 U.S. 273 (1958). Nothing in the administrative record demonstrates such intent here.

Indeed, the undisputed evidence points in precisely the opposite direction. For more than a decade, Mr. Williams openly pursued every lawful avenue available to regularize his immigration status. His United States citizen spouse successfully petitioned for him through an approved Form I-130. He filed Form I-212 seeking permission to reapply for admission, which DHS accepted and has allowed to remain pending for years. Counsel repeatedly requested prosecutorial discretion and sought to reopen proceedings. The National Visa Center later notified him that an immigrant visa number had become available. Throughout this period, Mr. Williams remained continuously employed, supported his United States citizen wife and daughters, and maintained an address and employment known to the Government.

Those actions are fundamentally inconsistent with an individual acting with the "bad purpose" necessary to establish willfulness. They demonstrate sustained engagement with the immigration system, not an effort to evade it.

Nor does the Decision explain how DHS reconciles its allegation of willful refusal with its own conduct. DHS accepted Mr. Williams's Form I-212 application and retained it for years without adjudication. DHS likewise received repeated requests for prosecutorial discretion and joint reopening. Having accepted those filings and left them unresolved, DHS now seeks to

characterize the same period as evidence of intentional misconduct. The Decision offers no explanation for that contradiction.

The absence of evidence is particularly striking because this is not a case in which relevant evidence would be unavailable to the Government. If DHS directed Mr. Williams to report for removal, it should possess the notice. If it requested travel documents, it should possess the request. If transportation was scheduled, it should possess those records. If Jamaican officials accepted repatriation, DHS should possess that documentation. If Mr. Williams refused to cooperate, DHS should possess reports reflecting that refusal.

The Decision cites none of it. Instead, the Decision substitutes a legal conclusion for proof.

The Administrative Procedure Act does not permit agencies to impose sanctions in that manner. Before DHS may impose a civil penalty exceeding $1.8 million, it must establish the statutory elements through reliable, probative, and substantial evidence. Because the administrative record contains no evidence that Mr. Williams willfully failed or refused to depart within the meaning of INA § 274D, DHS has failed to carry its burden, and the Decision must be rescinded.

*C. DHS Has Produced No Evidence That Mr. Williams Conspired to or Took Any Action Designed to Prevent or Hamper His Departure.*

To the extent DHS seeks to impose liability under the alternative provision of INA § 274D(a)(2), the Decision fails for the same fundamental reason: the administrative record contains no evidence supporting that theory.

Section 274D(a)(2) applies only where a noncitizen "conspires to or takes any action designed to prevent or hamper" his departure pursuant to a final order of removal. Congress deliberately chose language requiring affirmative conduct directed toward obstructing removal. Mere continued presence in the United States does not satisfy that standard.

The Decision identifies no evidence that Mr. Williams entered into any agreement to prevent his removal. It identifies no evidence that he concealed his whereabouts, provided false information to immigration authorities, failed to appear after receiving a lawful directive, destroyed or withheld travel documents, interfered with removal logistics, or otherwise engaged in conduct intended to frustrate the execution of a removal order.

Indeed, the undisputed record demonstrates precisely the opposite.

Mr. Williams has remained continuously employed under his own name, has maintained a known residence, has openly pursued lawful immigration relief through USCIS and EOIR, has retained counsel to communicate with DHS, and has repeatedly sought prosecutorial discretion from the

Government itself. Those actions are inconsistent with an intent to conceal himself or impede enforcement of a removal order. Rather, they reflect an individual who has remained engaged with the immigration system while pursuing lawful means of resolving his immigration status.

Nor does the Decision explain what specific conduct DHS believes constituted an action "designed to prevent or hamper" removal. The agency merely recites the statutory language without identifying any supporting facts. Such conclusory assertions cannot satisfy DHS's burden of proof. Administrative agencies may not presume intent where the record contains no evidence from which that intent can reasonably be inferred.

If DHS contends that Mr. Williams engaged in conduct designed to prevent or hamper his removal, it must identify the conduct, explain why it demonstrates the requisite intent, and support those findings with reliable, probative, and substantial evidence. It has done none of those things.

Accordingly, DHS has failed to establish liability under INA § 274D(a)(2), and the Decision cannot be sustained on that alternative basis.

*D. DHS Has Produced No Evidence Supporting the Amount of the Proposed Penalty.*

Even assuming, *arguendo*, that DHS had established a violation of INA § 274D—which it has not—the agency has failed to establish any evidentiary or legal basis for assessing a civil penalty of **$1,820,352.00.**

The Decision provides no explanation whatsoever regarding how DHS calculated that amount. It does not identify the date on which the alleged violation began. It does not identify the date on which the alleged violation ended. It does not explain the daily penalty used in the calculation. It does not explain whether the amount reflects inflation adjustments, discretionary reductions, mitigating circumstances, or any individualized assessment. Instead, the Decision simply announces a total figure and that is insufficient.

Administrative agencies must do more than announce a conclusion. They must articulate a rational connection between the facts found and the decision made. Here, the Decision contains no findings from which either Mr. Williams or a reviewing tribunal can determine how DHS arrived at the proposed penalty or whether that calculation complies with the governing statute and regulations.

The absence of any explanation is particularly significant because the penalty imposed appears to reflect the statutory maximum. Congress authorized penalties of "not more than" the statutory daily amount. That language confers discretion. It does not require the maximum penalty in every case.

Yet nothing in the Decision indicates that DHS exercised any discretion at all. The Decision contains no discussion of Mr. Williams's individual circumstances. It does not acknowledge his lack of criminal history. It does not acknowledge his approved Form I-130. It does not acknowledge his pending Form I-212 application. It does not acknowledge his repeated requests for prosecutorial discretion. It does not acknowledge his United States citizen spouse and children. It does not acknowledge his inability to pay. It does not explain why the statutory maximum, rather than some lesser amount, was appropriate in this particular case.

The omission of any individualized analysis strongly suggests that the penalty was not the product of reasoned administrative decision-making but rather the mechanical application of a standardized formula. If that is the case, DHS has failed to exercise the discretion Congress delegated to it. An agency may not treat a discretionary statutory standard as mandatory or impose the maximum available sanction without considering the facts of the individual case.

Moreover, the Decision's erroneous assertion that Mr. Williams's removal order became final on May 27, 2016 further undermines the calculation itself. Because DHS relied upon an incorrect operative date, there is no way to determine whether the alleged accrual period—or the resulting monetary penalty—is accurate. The factual error infects the penalty calculation just as it infects the liability determination.

The Administrative Procedure Act requires agencies imposing sanctions to base those sanctions upon reliable, probative, and substantial evidence. 5 U.S.C. § 556(d). The Decision contains no evidence establishing how the penalty was calculated, why the statutory maximum was selected, or whether DHS exercised the discretion Congress required. Accordingly, even if liability existed, the proposed penalty could not be sustained on the present record.

**III. The Decision Is Arbitrary, Capricious, and Contrary to Law.**

Even if DHS had established the elements of INA § 274D—which it has not—the Decision independently fails because it reflects arbitrary administrative decision-making unsupported by the record and contrary to fundamental principles of federal administrative law.

Congress delegated to DHS the authority to impose civil penalties under INA § 274D. In exercising that authority, however, DHS remains bound by the Administrative Procedure Act ("APA"), which requires agencies to engage in reasoned decision-making based upon the evidence contained in the administrative record. An agency acts arbitrarily and capriciously when it relies upon incorrect facts, fails to examine relevant evidence, fails to explain its reasoning, or reaches conclusions unsupported by the administrative record.

The Decision suffers from each of those defects.

First, the Decision rests upon a demonstrably incorrect factual premise. DHS states that Mr. Williams's removal order became final on May 27, 2016, when that date instead reflects only the denial of a subsequent motion to reopen. The operative removal order became administratively final years earlier. DHS provides no explanation for this error, nor does it identify any legal authority supporting its conclusion. Because the asserted finality date forms the factual predicate for the agency's analysis of liability and penalty accrual, the error permeates the Decision and cannot be dismissed as harmless.

Second, the Decision fails to identify the evidence supporting its conclusions. Administrative agencies must do more than announce the result they have reached. They must explain **why** the evidence supports that result. Here, the Decision identifies no witness statements, documentary evidence, removal records, communications with Respondent, travel-document requests, reporting instructions, transportation records, or other evidence establishing that Mr. Williams violated INA § 274D. Instead, the Decision merely recites statutory language and announces legal conclusions.

That is not reasoned administrative decision-making.

Third, the Decision entirely fails to explain how DHS calculated the proposed penalty of **$1,820,352.00**. It identifies neither the date upon which the alleged violation commenced nor the period during which penalties purportedly accrued. It provides no mathematical calculation, no explanation of the daily penalty employed, and no discussion of the factors considered in selecting the amount assessed. Without those findings, neither Mr. Williams nor any reviewing tribunal can determine whether the proposed penalty was lawfully calculated.

Fourth, nothing in the Decision demonstrates that DHS exercised the discretion Congress delegated under INA § 274D. Congress authorized civil penalties of "not more than" the statutory daily amount, thereby conferring discretion upon the agency rather than requiring the maximum penalty in every case. Yet the Decision contains no discussion whatsoever of why the maximum penalty was appropriate here. It does not acknowledge Mr. Williams's lack of criminal history, his approved Form I-130, his pending Form I-212 application, his repeated requests for prosecutorial discretion, his continuous employment, his United States citizen wife and children, or his undisputed inability to pay. The omission of any individualized analysis strongly suggests that the penalty was imposed through the mechanical application of a standardized formula rather than the exercise of reasoned administrative judgment.

Finally, the Decision fails to demonstrate a rational connection between the facts contained in the administrative record and the conclusions reached by the agency. The Decision assumes that Mr. Williams's continued presence in the United States establishes a willful violation of INA § 274D, yet identifies no evidence that he ever refused to comply with any directive issued by DHS or otherwise engaged in conduct prohibited by the statute. An agency may not substitute

assumptions for findings or conclusions for evidence. Where the administrative record does not support the agency's ultimate determination, the resulting decision cannot stand.

These deficiencies are not merely technical. They deprive Mr. Williams of the ability to understand the basis for the extraordinary penalty imposed against him, prevent meaningful administrative or judicial review, and undermine confidence that the agency exercised the authority delegated by Congress in a reasoned and lawful manner.

Administrative discretion is broad, but it is not unlimited. Congress entrusted DHS with the authority to impose civil penalties only through lawful, reasoned, and evidence-based decision-making. Because the Decision rests upon an incorrect factual premise, fails to explain its reasoning, omits essential factual findings, and is unsupported by the administrative record, it is arbitrary, capricious, and contrary to law. The Decision should therefore be rescinded.

**IV. The Decision Violates the Constitution.**

Even if DHS had satisfied the statutory requirements of INA § 274D and complied with the Administrative Procedure Act—which it has not—the Decision independently violates the Constitution. The Government seeks to impose an extraordinary monetary sanction exceeding $1.8 million through an administrative process that afforded Respondent neither adequate notice, meaningful procedural protections, nor the individualized consideration required by the Constitution.

*A. The Decision Violates the Fifth Amendment Guarantee of Due Process.*

The Fifth Amendment provides that no person shall be deprived of property without due process of law. U.S. Const. amend. V. A civil penalty exceeding $1.8 million unquestionably implicates a substantial property interest. Before imposing such a sanction, the Government must provide procedures reasonably calculated to ensure accurate and fundamentally fair decision-making. The procedures employed here fall well short of that constitutional minimum.

First, the Decision fails to provide adequate notice of the factual basis for the proposed penalty. It identifies an incorrect operative removal date, provides no explanation of when the alleged violation began, no explanation of how long it allegedly continued, no calculation supporting the amount assessed, and no identification of the evidence upon which DHS relies. As a result, Mr. Williams is left to speculate regarding the factual basis for the extraordinary penalty imposed against him.

Second, the Decision fails to provide a meaningful opportunity to respond to the evidence against him because DHS has identified no evidence. Due process requires more than an opportunity to deny conclusory allegations. It requires notice of the facts and evidence upon

which the Government intends to rely so that a respondent may meaningfully challenge those assertions. See *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Here, the Decision merely recites statutory conclusions while withholding the evidentiary basis for those conclusions.

Third, the administrative review process itself raises substantial due process concerns. Under the governing regulations, the appeal is decided by a supervisory immigration officer within DHS rather than by an independent adjudicator. See 8 C.F.R. § 281.1(e)(2). At the same time, civil penalties collected under INA § 274D are deposited into accounts benefiting DHS's enforcement activities. While Respondent does not suggest actual bias by any individual officer, due process requires procedures that minimize the risk of erroneous deprivation where significant property interests are at stake. See *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980); *Ward v. Village of Monroeville*, 409 U.S. 57 (1972).

Application of the familiar balancing framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), demonstrates the constitutional deficiency of these procedures. The private interest at stake is extraordinary. DHS seeks to impose a penalty exceeding $1.8 million against the sole wage earner supporting a United States citizen spouse and two United States citizen children.

The risk of erroneous deprivation is likewise substantial. The Decision rests upon an incorrect factual premise, identifies no supporting evidence, contains no explanation of the penalty calculation, and provides no indication that DHS exercised individualized discretion.

Finally, the Government's interest in dispensing with additional procedural safeguards is minimal. Requiring DHS to identify the evidence supporting its conclusions, explain its reasoning, and permit meaningful review imposes little administrative burden while significantly reducing the risk of erroneous decision-making.

Because the procedures employed here fail to provide the notice and meaningful opportunity to be heard required by the Fifth Amendment, the Decision cannot stand.

*B. The Proposed Penalty Violates the Excessive Fines Clause of the Eighth Amendment.*

The Eighth Amendment prohibits the Government from imposing excessive fines. U.S. Const. amend. VIII. A monetary sanction violates the Excessive Fines Clause when it is punitive and grossly disproportionate to the gravity of the offense. *United States v. Bajakajian*, 524 U.S. 321 (1998). The penalty at issue satisfies both requirements.

First, the proposed assessment is plainly punitive. Congress characterized the assessment as a "civil penalty," and DHS has acknowledged that the purpose of these penalties includes

deterrence. The proposed assessment therefore constitutes a "fine" within the meaning of the Eighth Amendment. See *Austin v. United States*, 509 U.S. 602 (1993).

Second, the amount sought is grossly disproportionate to the alleged misconduct. DHS seeks to impose more than **$1.8 million** based solely upon the allegation that Mr. Williams remained in the United States following entry of a removal order while openly pursuing lawful immigration relief. The Decision identifies no aggravating circumstances, no criminal conduct, no fraud, no obstruction of removal, and no harm to the Government.

Nor does the Decision demonstrate that DHS considered any individualized mitigating circumstances before imposing what appears to be the statutory maximum. It does not acknowledge Mr. Williams's lack of criminal history, his approved Form I-130 petition, his pending Form I-212 application, his repeated requests for prosecutorial discretion, his long-term employment, or his role as the sole provider for his United States citizen family.

The amount sought would effectively destroy Respondent's financial future while providing no discernible relationship to the gravity of the alleged violation. Such a sanction is precisely the type of disproportionate governmental punishment prohibited by the Excessive Fines Clause.

*C. The Decision Raises Serious Seventh Amendment Concerns.*

Finally, Respondent preserves his objection that the imposition of a punitive civil penalty of this magnitude through an administrative process, without determination of liability by an Article III court or a jury, raises substantial concerns under the Seventh Amendment.

The Supreme Court has recently reaffirmed that where the Government seeks civil penalties functioning as punishment for violations of public law analogous to traditional common-law actions, the Seventh Amendment may require adjudication before a jury. See *SEC v. Jarkesy*, 603 U.S. 109 (2024); see also *Tull v. United States*, 481 U.S. 412 (1987).

Because the Decision seeks to impose an extraordinarily punitive monetary sanction based upon contested factual allegations, Respondent preserves all rights arising under the Seventh Amendment should judicial enforcement of the proposed penalty be sought.

**V. In the Alternative, DHS Failed to Exercise the Individualized Discretion Required by INA § 274D.**

Even if DHS concludes that Respondent violated INA § 274D—which Respondent vigorously disputes—the proposed penalty should nevertheless be rescinded or substantially reduced because the Decision demonstrates no exercise of the individualized discretion Congress required.

INA § 274D does not mandate a fixed civil penalty. Rather, Congress authorized penalties of "not more than" the applicable statutory daily amount. That language reflects a deliberate delegation of discretion to DHS. It authorizes the agency to evaluate the facts of each case and determine whether a penalty is appropriate and, if so, in what amount.

The Decision contains no indication that such discretion was exercised. It does not explain why a penalty exceeding **$1.8 million** is appropriate for this Respondent. It does not identify any aggravating circumstances. It does not explain why lesser sanctions would be inadequate. It does not distinguish Mr. Williams's case from any other respondent subject to a final order of removal.

Instead, the Decision appears to treat the statutory maximum as the default outcome. That approach is inconsistent with the statute Congress enacted. A discretionary penalty cannot lawfully become a mandatory one through agency practice. Where Congress confers discretion, the agency must actually exercise it.

Moreover, the undisputed record contains numerous mitigating circumstances warranting substantial reduction—or complete rescission—of any penalty. Mr. Williams has no criminal history. He has maintained continuous employment for many years. He has supported his United States citizen wife and daughters. He has openly remained at known residences and places of employment. He has pursued lawful immigration relief through every avenue available to him, including an approved Form I-130 petition, a pending Form I-212 application, motions before EOIR, and repeated requests for prosecutorial discretion.

There is no allegation that he committed fraud, concealed his whereabouts, used aliases, interfered with immigration officers, or engaged in any conduct designed to obstruct enforcement of the immigration laws. The Decision discusses none of these factors.

Likewise, the Decision fails to consider the devastating financial consequences of the proposed assessment. A civil penalty exceeding **$1.8 million** is not merely significant—it is effectively uncollectible. Nothing in the record suggests that DHS considered Respondent's ability to pay, the practical effect of the proposed assessment, or whether such an extraordinary penalty bears any reasonable relationship to the purposes of INA § 274D.

An agency exercising delegated discretion must demonstrate that it has considered the relevant facts before imposing an extraordinary sanction. Here, the Decision provides no indication that DHS weighed either aggravating or mitigating circumstances. Instead, it reflects the mechanical application of a penalty untethered to the facts of this case.

Accordingly, even if liability were established—which it has not—the Decision should be vacated and remanded for a lawful exercise of discretion. At a minimum, any civil penalty

should be substantially reduced to reflect the absence of aggravating conduct and the compelling mitigating circumstances present here.

**VI. Conclusion**

Congress authorized DHS to impose civil penalties only after establishing the statutory elements through reliable, probative, and substantial evidence and exercising the discretion entrusted to the agency. The Decision before the Department does neither. It rests upon an incorrect factual premise, identifies virtually no supporting evidence, provides no meaningful explanation of its reasoning, and imposes an unprecedented penalty unsupported by the administrative record. The law does not permit such a result.

Respondent respectfully requests that DHS:

1. Rescind the Decision and withdraw the proposed civil penalty in its entirety;
2. Dismiss these proceedings with prejudice;
3. Produce the complete administrative record relied upon in issuing the Notice and Decision; and
4. Grant such other and further relief as justice requires.

Respectfully submitted this 28th day of July, 2026.

Tracie L. Morgan, Esq.
Hope Immigration, LLC
2110 Powers Ferry Road SE, Suite 310
Atlanta, GA 30339
678-713-4255
tracie@hopeimmigration.com
GA Bar No. 411089